RECEIVED
IN ALEXANDRIA, LA
DEC 30 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BIG BUCKS PRESERVE, LLC | CIVIL ACTION NO. 08-2021 |
| VERSUS | JUDGE TRIMBLE |
| COLUMBIA GULF TRANSMISSION CO. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Columbia Gulf Transmission Company ("CGT").[1] For the reasons expressed below, the court finds that CGT's motion should be granted and, accordingly, all claims against CGT by plaintiff Big Bucks Preserve, LLC ("Big Bucks") should be dismissed with prejudice.

**I.     BACKGROUND**

**A.     Relevant Facts**

Plaintiff Big Bucks is a trophy buck game preserve located in Richland and Madison Parishes and organized as a limited liability company under Louisiana law. The preserve consists of approximately 550 acres which were originally owned by Big Bucks' owner and manager, James T. Strong ("Strong"). Strong transferred the property into the assets of the LLC in August of 2007. On August 8, 2007, Big Bucks sold the property to Kerr-McGee Oil & Gas Offshore, L.P. ("Kerr-

---

[1] R. 31.

1

McGee").[2] On August 15, 2007, Kerr-McGee granted hunting rights to Big Bucks as contemplated in the Hunting Lease attached as "Exhibit B" to CGT's motion.[3]

On or about December 14, 2007, a pipeline owned by CGT and partially located on the 550 acres leased by Big Bucks, exploded. Plaintiff asserts that the explosion negatively impacted the number of bucks and, more specifically, trophy bucks killed on the preserve during the 2007 - 2008 hunting season. Plaintiff alleges that he and his family have been prevented from hunting on the property out of fear of future explosions. Plaintiff further asserts that, in addition to the loss of use of the property, the value of the leasehold interest has been diminished because of the explosion. Plaintiff seeks monetary relief for these alleged damages.

Recognizing the existence of an agreement to mediate disputes arising under the Hunting Lease, the court requested briefs on the issue of the applicability of such agreement to the parties to this suit. Being satisfied that defendant CGT was not a party to the Hunting Lease, we find that we possess diversity jurisdiction over this matter, given that plaintiff is domiciled in Louisiana and CGT is domiciled in Indiana and the amount in controversy exceeds the statutory minimum, and the case is properly before the court.[4]

**B.   Applicable Standard**

Summary judgment is mandated when the

> pleadings, the discovery and disclosure materials on file, and any

---

[2] R. 40 at p. 2; Cash Deed attached as "Exhibit A" to motion [R. 31-2].

[3] R. 31-3. The court notes that Kerr-McGee is the present owner of the property, but is not a party to this suit.

[4] 28 U.S.C. § 1332.

2

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[5]

In reviewing such evidence, the court will draw all justifiable inferences in favor of the non-moving party.[6] An issue of fact is "genuine" when its resolution determines the non-moving party's entitlement to relief.[7]

Once the movant has demonstrated "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of fact for trial.[8] Conclusory allegations and denials, speculation, improbable references, unsubstantiated assertions and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue of fact necessitating trial.[9] The court will not assume that the non-moving party will meet its burden in the future, as such party is obligated to respond affirmatively to a motion for summary judgment and may not rest upon the pleadings without specific factual allegations in support of these claims.[10]

Although the movant must demonstrate a lack of evidence as to one or more necessary elements of the non-moving party's case, it is not necessary that the movant negate the elements of

---

[5]Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[6]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

[7]Anderson, 477 U.S. at 248.

[8]Celotex, 477 U.S. at 325; Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9]SEC v. Recile, 10 F.3d 1093, `097 (5th Cir. 1993).

[10]Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)).

the non-moving party's case.[11] If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-moving party's response.[12]

## II. ANALYSIS

### A. Non-economic damages

CGT asserts that summary judgment is appropriate as to all claims by Big Bucks for mental and emotional damages; loss of enjoyment value of 2007-2008 hunting season and future hunting seasons; inconvenience; negligent infliction of emotional distress; and intentional infliction of emotional distress because such non-economic damages are unavailable to plaintiff an LLC under Louisiana law.[13]

Big Bucks argues that an LLC is entitled to recover damages for the loss of enjoyment of hunting rights, citing a 2007 ruling by U.S. District Judge Robert James in Sporting Land, LLC v. CHC Energy, LLC.[14] In that case, the court considered a request for preliminary injunctive relief by Sporting Land, LLC, a hunting preserve similar to Big Bucks. The court found that the loss of enjoyment of hunting land constituted an "irreparable injury" for purposes of injunctive relief analysis. Our reading of the ruling, however, discloses that the court did not find that Sporting Land, LLC was entitled to damages for loss of enjoyment of hunting land, but only that the loss of enjoyment of that land constituted the type of irreparable harm contemplated by jurisprudence

---

[11]Id., citing Celotex, 477 U.S. at 323 and Lujan, 497 U.S. at 885-86.

[12]Id.

[13]R. 31 at p. 6; R. 1-4 at ¶ 12.

[14]No. 07-1692, slip op. (W.D. La. Nov. 19, 2007).

concerning grounds for injunctive relief. We do not find that the <u>Sporting Land</u> ruling supports the premise argued by Big Bucks.

The court has carefully reviewed applicable jurisprudence and finds that Big Bucks, as an LLC under the laws of the State of Louisiana may not recover damages for negligent or intentional infliction of emotional distress, mental and emotional harm or for loss of enjoyment of value of 2007 - 2008 hunting season.[15] "As an entity designed to produce profits, the only type of loss a corporation can suffer is economic."[16]

Plaintiff argues that, although Big Bucks is organized as an LLC, it is, in truth, merely the alter ego of its sole member and manager, Strong. Plaintiff asserts that Strong is so closely connected with Big Bucks that the court should disregard the existence of the business entity and deny summary judgment as to non-economic damages, which would be available reliefs to Strong as an individual. In short, plaintiff advocates the piercing of its own corporate veil. Plaintiff points out that Big Bucks does not have a separate bank account and does not file a separate tax return. Finally, plaintiff argues that Strong has contributed more than $450,000 of his personal funds to develop the trophy buck preserve.

CGT argues that plaintiff should not be allowed to pierce his own veil because such a result is inconsistent with Louisiana jurisprudence which has insisted that entities enjoying the benefits of limited liability must also endure the drawbacks of such protection.

Under Louisiana law, the personality of a juridical person, such as an LLC, is distinct from

---

[15]<u>Walle Corp. v. Rockwell Graphics Systems, Inc.</u>, 1992 WL 245963 (E.D. La. 9/21/1992).

[16]<u>Id.</u> at *5.

5

that of its members.[17] Louisiana law permits the piercing of a corporate veil under the "alter ego" theory. Generally, courts employ this theory when the juridical person is used to "defeat public convenience, justify wrong, protect fraud, or defend crime."[18]

Louisiana limited liability companies offer protection from liability for the LLC's debts, including tort liability, absent proof of fraud.[19] Given the obvious benefits Strong derives from the use of this business entity, the court finds that he may not now be permitted to avail himself of benefits which would flow from not being organized as an LLC.[20] Accordingly, the court rejects Big Bucks' argument that its own corporate entity should be disregarded. Finding no support for such a result in fact or in policy, the court accordingly finds that CGT's motion for summary judgment should be granted as to all claims by Big Bucks for non-economic damages and all such claims should be dismissed with prejudice.

### B.    Economic damages

CGT also argues that Big Bucks' remaining claim, asserting a decrease in the value of its leasehold interest, is without merit because there is no proof that Big Bucks suffered any adverse effect from the explosion. CGT points out that Big Bucks makes no claim for physical damage to property. Moreover, CGT argues that the bundle of rights Big Bucks derived from the Hunting Lease from Kerr-McGee is limited and expressly disclaims any warranty of peaceable possession in

---

[17]La. Civ. C. Art. 24.

[18]Smith v. Cotton's Fleet Service, Inc., 500 So.2d 759, 762 (La. 1987).

[19]La. R.S. 12:1320.

[20]Smith, 500 So.2d at 763; Hilton Hotels Corp. v. Traigle, 360 So.2d 245, 246 (La. App. 1 Cir. 1978).

contemplation of the oil and gas activity which was ongoing at the time of the lease.[21] CGT argues that, given the lack of evidence to support plaintiff's claim for economic damages in the form of lost value, such claim is speculative and should be dismissed.

Big Bucks claims that, as a result of the explosion, it has been prevented from hunting on approximately half of its 550 acre lease out of fear of the possibility of future explosions. Big Bucks explains that the deer, sensing the limited hunting activity, have migrated to the portion of the lease which Strong finds unusable for safety reasons. Strong also asserts that the number of trophy bucks killed on the lease has decreased seventy-five percent (75%) from the 2006-2007 season.[22] Given the limited length of time Big Bucks is entitled to hunt this lease, which ends in 2017, Strong asserts

---

[21]R. 31-3 (Hunting Lease) at ¶ 1.8, which reads:

> LESSEE has consulted with its attorneys, has obtained title opinions regarding the Premises, and fully understands and acknowledges that the Premises are subject to numerous servitudes, rights of way, mineral leases and other encumbrances which will impact and disrupt the use of the Premises and that LESSEE's rights granted herein are subject thereto. In addition to any knowledge that may be disclosed by instruments of record, it is well known and understood in the community and by LESSEE that oil and gas exploration and production operations will be conducted on the Premises, that any and all related facilities will be constructed on the Premises, and that a major pipeline will be constructed on the Premises. LESSEE recognizes and acknowledges that the activities and constructions planned or permitted on the Premises will disrupt, and possibly destroy its ability to conduct the activities on the Premises described in this agreement, and that, while it is the intention of this agreement to grant to LESSEE and to none other the hunting rights described herein, nothing herein shall be construed to grant LESSEE peaceable possession of the Premises.

[22]Affidavit of James T. Strong, attached as "Exhibit A" to plaintiff's memorandum in opposition to motion [R. 40-3].

that each year is pivotal. Thus, the essence of Big Bucks' claim is that the quality of the hunting possible on the lease is diminished and, as such, the value of that asset is also diminished.

CGT cites the 1994 Louisiana Supreme Court ruling in <u>Inabnet v. Exxon Corporation</u>[23] as authority that Big Bucks does not have a cause of action against it in tort because CGT's servitude preexisted Big Bucks' lease. Although the court determined that, as to the land in which plaintiff and Exxon held coexisting property rights, plaintiff's oyster lease was subject to Exxon's right-of-way which predated the oyster lease, the court did note that other factors must be considered, such as:

> the temporal order of the leases or other rights, the nature of the rights, the type of activities normally incidental to the use for which the rights were granted, the damage-causing party's knowledge of the existence of the damaged party's rights, the availability of alternative methods of exercising the right so as to cause little or no damage, and others.[24]

The ruling in <u>Inabnet</u> makes it clear that, though CGT is not a party to the Hunting Lease executed by plaintiff and Kerr-McGee, the rights acquired by Big Bucks in that agreement are subject to the rights already granted to CGT. While this does not foreclose, on its own, the possibility of tort liability by CGT, it does create a context in which to analyze the issues before us.

At this point it is important to note that plaintiff was the original owner of the acreage at issue, having sold it to Kerr-McGee only days before being granted hunting rights thereon. Therefore, the court finds that Big Bucks and CGT were mutually aware of the rights of the other, having, presumably, exercised coexisting rights to the property for some time prior to the Hunting

---

[23] 642 So.2d 1243 (La. 1994).

[24] <u>Id.</u> at 1252. <u>See also</u> <u>Jurisich v. Jenkins</u>, 749 So.2d 597 (La. 1999) (temporal order of acquisition of rights is not the only factor to be considered under the court's ruling in <u>Inabnet</u>).

8

Lease. Moreover, we find that the operation of a natural gas pipeline on the acreage could not have been a surprise to Big Bucks, even without the warning issued in the Hunting Lease. While we make no judgment as to CGT's operation of this specific pipeline, we do not find that the unfortunate eventuality of a pipeline leak or explosion was outside the realm of possible outcomes given the nature of natural gas production. This is confirmed by Big Bucks' own argument that it is aware of a prior explosion on this same pipeline.[25] Apparently this prior incident did not discourage Big Bucks' desire for the hunting rights to the property at issue. Finally, as admitted by the parties, the right-of-way belonging to CGT most certainly predates the Hunting Lease, as it is referred to therein.

Accordingly, the court finds that the hunting rights acquired by Big Bucks were subject to the right-of-way previously granted in favor of CGT and, as reasoned above, the unfortunate explosion was not outside the realm of disturbances both known by plaintiff and specifically contemplated in the Hunting Lease.

Additionally, the court finds that plaintiff has not demonstrated a diminution in the trophy buck population on the property, but, rather, only asserts that the herd has migrated to the portion of the property plaintiff chooses not to hunt. Given, as discussed above, the warnings and cautions acknowledged by plaintiff in the lease, we find that plaintiff has failed to demonstrate the existence of a genuine issue of fact as to loss of value of the leasehold, the resolution of which would entitle plaintiff to recovery of economic damages. Accordingly, the court finds that plaintiff's claim for economic damages in the form of loss of value of the leasehold should be dismissed with prejudice.

---

[25] R. 40-2 at p. 2.

### III. CONCLUSION

The court has carefully considered the law and argument presented by the parties and finds, as reasoned above, that no genuine issues of material fact exist with respect to plaintiff's entitlement to non-economic damages by virtue of plaintiff's status as an LLC under Louisiana law. Further, the court finds that no genuine issue of material fact remains as to plaintiff's entitlement to damages for loss of value of its leasehold given the limited nature of the rights it acquired under the Hunting Lease executed between Big Bucks and Kerr-McGee. Finally, the court also finds that plaintiff has failed to present any evidence of diminution of the trophy buck population as a result of the explosion, merely arguing that it has chosen not to conduct hunting on portions of the lease and that the deer have instinctively moved into the areas not being hunted.

Accordingly, the court finds that all claims by plaintiff, both for economic and non-economic damages, should be dismissed with prejudice.

A judgment in conformity with these findings will be issued this day.

**Alexandria, Louisiana**
**December 30, 2009**

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE